UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Synthes USA, LLC; DePuy Spine, LLC; and DePuy Synthes Sales, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Stephen N. Davis, Jr.; Jeffrey A. Domico; and K2M Incorporated, <br><br> Defendants. | Civil Action No.: 4:17-cv-02879-RBH <br><br> **ORDER AND** <br> **LIMITED PRELIMINARY INJUNCTION** |

This matter is before the Court on Plaintiffs' motion for preliminary injunction and motion for expedited discovery. *See* ECF Nos. 5 & 6. The Court held a hearing on the motions on November 28, 2017, and took them under advisement. *See* ECF No. 37. The Court now grants in part and denies in part the motions as set forth below.

**I.     Motion for Preliminary Injunction**

As explained below, the Court will grant in part and deny in part Plaintiffs' motion for preliminary injunction and issue a *Limited* Preliminary Injunction Order. In so ruling, the Court makes the following findings of fact and conclusions of law as required by Federal Rules of Civil Procedure 52(a)(2) and 65(d). To the extent that any findings of fact constitute conclusions of law, or vice-versa, they shall be so regarded.

**Findings of Fact**[1]

The three plaintiffs—Synthes USA, LLC, DePuy Spine, LLC, and DePuy Synthes Sales, Inc. (collectively, "Plaintiffs" or "DePuy Synthes")—are a family of companies that design, manufacture,

---

[1] The Court makes these findings of fact based on the parties' exhibits, briefs, and arguments presented at the hearing. The Court cites these materials where practicable.

and sell medical devices used in orthopedic surgeries. *See* Verified Complaint[2] [ECF No. 1] at ¶ 2. The two individual defendants—Stephen N. Davis, Jr. and Jeffrey A. Domico—are longtime friends and until recently were employed by DePuy Synthes as sales consultants with the principal responsibility of selling implants used in spinal surgeries. *Id.* at ¶ 3. The corporate defendant, K2M Incorporated ("K2M"), is a competitor company that likewise designs, manufactures, markets, and sells implants used in spinal surgeries. *Id.* at ¶ 5. Davis and Domico recently left employment with DePuy Synthes and now work for K2M as sales consultants selling spinal implants. *Id.* at ¶¶ 5–6.

Davis began his employment with DePuy Synthes in October 2002, and Domico began his employment with DePuy Synthes in October 2005. *See* Davis Aff. [ECF No. 11-4] at ¶ 2; Domico Aff. [ECF No. 11-1] at ¶ 3. At the beginning of their respective employment, both men signed a document entitled "Synthes® Spine Sales Consultant Confidentiality, Non-Solicitation, and Non-Competition Agreement" (hereinafter, "the Agreements"). *See* ECF Nos. 1-1, 1-2, 11-2, & 11-5. These Agreements contain several restrictive covenants, including non-competition and non-solicitation clauses,[3] and a choice-of-law provision selecting Pennsylvania law. During their employment with DePuy Synthes, Davis was responsible for accounts in the Charleston and Beaufort areas, while Domico was responsible

---

[2] Defendants argue Plaintiffs cannot rely on the allegations made "upon information and belief" in their Verified Complaint to support the extraordinary remedy of preliminary injunctive relief. ECF No. 11 at pp. 17–18; ECF No. 15 at pp. 11–12. However, a verified complaint is wholly sufficient for purposes of ruling on a preliminary injunction motion. *See, e.g., Meineke Car Care Centers, Inc. v. Glover*, 2011 WL 240462, at *4 (W.D.N.C. Jan. 21, 2011 (granting a preliminary injunction by relying on allegations in a verified complaint), *aff'd*, 446 F. App'x 613 (4th Cir. 2011). Analogously, a court can grant a temporary restraining order (a similar form of relief) based on a verified complaint alone. *See* Fed. R. Civ. P. 65(b)(1)(A). In fact, the Fourth Circuit has indicated a complaint—verified or not—must be considered. *See G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 725–26 (4th Cir. 2016) (finding the district court abused its discretion when it "misstated the evidentiary standard governing preliminary injunction hearings" by stating "[t]he complaint is no longer the deciding factor, admissible evidence is the deciding factor"), *vacated and remanded on other grounds*, 137 S. Ct. 1239 (2017). Moreover, Plaintiffs are not just relying on their Verified Complaint; they have submitted two affidavits from Jay Stokes as well as several e-mails that are critical to the Court's decision in this matter. *See* ECF Nos. 20-1 & 36.

[3] These clauses are quoted and discussed below.

for the Florence and (later) southern North Carolina areas.

On September 28, 2017, Domico resigned from DePuy Synthes and began working for K2M the next day (September 29). ECF No. 11-1 at ¶¶ 30, 35. Domico's new K2M territory encompasses the Charleston and Beaufort areas. *Id.* ¶ 37. On October 2, 2017, Davis resigned from DePuy Synthes and began working for K2M the next day (October 3). ECF No. 11-4 at ¶¶ 29, 31. Davis's new K2M territory encompasses the Florence, Conway, and Myrtle Beach areas, including McLeod Regional Hospital in Florence. *Id.* at ¶ 33. In essence, Davis and Domico now work for K2M in the other's previous territory to which they were assigned while working for DePuy Synthes.

On October 25, 2017, Plaintiffs commenced this action pursuant to 28 U.S.C. § 1332 by filing a verified complaint, a motion for a preliminary injunction, and a motion for expedited discovery. *See* ECF Nos. 1, 5, & 6. Plaintiffs asserted four causes of action: breach of fiduciary duty, breach of contract, aiding and abetting breach of fiduciary duty, and tortious interference with contract. *See* ECF No. 1 at pp. 20–28. On November 8, 2017, Domico and Davis jointly filed a response in opposition to both motions, and K2M filed a response in opposition to the preliminary injunction motion. *See* ECF Nos. 11, 14, & 15. That same day (November 8), Plaintiffs' counsel called the Clerk's Office, left a voice message, and sent an email stating: "Given that counsel for Defendants have now made their appearance, Plaintiffs respectfully request that a hearing on Plaintiffs' Motion for Preliminary Injunction be set at the Court's earliest convenience." ECF No. 32 at p. 9. On November 15, 2017 (the deadline for filing a reply), Plaintiffs filed a reply in further support of their motion for preliminary injunction.[4]

---

[4] To summarize, the parties have submitted the following exhibits: copies of Davis' and Domico's Agreements, affidavits and declarations of Domico and Davis, copies of K2M's offer letters to Davis and Domico, a text message between Davis and Dr. Christopher Paramore, an affidavit of Patrick DeLong, an affidavit of Jay Stokes, and a supplemental affidavit of Stokes with attached emails referencing direct contact/responsibility by Davis as to Dr. Christopher Paramore while working for DePuy Synthes in August 2017 and then in October 2017 while working for K2M. *See* ECF Nos. 1-1, 1-2, 11-1, 11-2, 11-3, 11-4, 11-5, 11-6, 11-7, 15-1, 15-2, 15-3, 20-1, 35, &

3

*See* ECF No. 20. Two days later, the Court scheduled a hearing on Plaintiffs' preliminary injunction motion, as well as their motion for expedited discovery; the Court set the hearing for November 28, 2017 (the week after Thanksgiving), stated it would rule on Plaintiffs' motions based on affidavits, briefs, and arguments from the lawyers, and permitted the parties to file additional affidavits up until the day before the hearing. *See* ECF Nos. 22 & 23.

At the hearing, Plaintiffs' counsel presented a proposed order to the Court narrowing the limited injunctive relief they sought.[5] Plaintiffs' counsel informed the Court that, at the present time, Plaintiffs were seeking an injunction only against Davis and Domico and not against K2M.[6] Plaintiffs' counsel further informed the Court that Plaintiffs were still seeking limited expedited discovery, notwithstanding the November 8 email requesting a hearing on the preliminary injunction hearing. The Court took the preliminary injunction motion (and expedited discovery motion) under advisement after the hearing ended.

## Conclusions of Law

I.  **Preliminary Injunction Standard**

Federal Rule of Civil Procedure 65 establishes the procedure for federal courts to grant preliminary injunctions. *See* Fed. R. Civ. P. 65. The usual purpose "of a preliminary injunction is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013) (citation omitted). Because of the extraordinary nature of injunctive relief, the

---

36. The Court has carefully reviewed and considered all these exhibits.

5  Defendants' counsel agreed with several paragraphs in the proposed order but disagreed with others.

6  K2M's offer letters in the record appear to acknowledge implicitly the validity of the restrictive covenants and K2M's good faith efforts to respect those restrictions.

4

United States Supreme Court has admonished that preliminary injunctions "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

A plaintiff seeking a preliminary injunction must satisfy each of the following four factors: (1) that the plaintiff is likely to succeed on the merits, (2) that the plaintiff is likely to suffer irreparable harm in the absence of preliminary injunctive relief, (3) that the balance of equities tips in the plaintiff's favor, and (4) that the injunction is in the public interest. *League of Women Voters of N. Carolina v. N. Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (citing *Winter*, 555 U.S. at 20). A plaintiff must make a *clear* showing that it is likely to succeed on the merits of its claim. *Winter*, 555 U.S. at 20-22. Likewise, a plaintiff must make a *clear* showing that it is likely to be irreparably harmed absent injunctive relief. *Id.* Only then may the court consider whether the balance of equities tips in the plaintiff's favor. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reissued in part*, 607 F.3d 355 (4th Cir. 2010), *overruling Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977). Finally, the court must pay particular regard to the public consequences of employing the extraordinary relief of injunction. *Id.* at 347.

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing, and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.

*Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (internal citations omitted). "Because

5

preliminary injunction proceedings are informal ones designed to prevent irreparable harm before a later trial governed by the full rigor of usual evidentiary standards, district courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted."[7] *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 725–26 (4th Cir. 2016), *vacated and remanded on other grounds*, 137 S. Ct. 1239 (2017).

An order granting a preliminary injunction "must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). A district court cannot issue a preliminary injunction unless "the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

## II. Discussion

### A. Likelihood of Success on the Merits — Breach of Contract Claim

The first *Winter* factor requires Plaintiffs to clearly show they are likely to succeed on the merits of at least one of the claims for which they seek preliminary injunctive relief. *See Pashby*, 709 F.3d at 321, 328; *Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 193 F. Supp. 3d 556, 566 (E.D. Va. 2016) ("Under the standard analysis, a plaintiff must make a 'clear showing' that it is likely to succeed on the merits of at least one of its claims at trial."), *aff'd*, 700 F. App'x 251 (4th Cir. 2017). "Although this inquiry requires plaintiffs seeking injunctions to make a 'clear showing' that they are likely to succeed at trial, *Real Truth*, 575 F.3d at 345, plaintiffs need not show a certainty of success."

---

[7] At the hearing, counsel for Davis and Domico asserted the supplemental affidavit of Jay Stokes was rife with hearsay. However, as indicated above, it is permissible to consider hearsay evidence in ruling on a motion for a preliminary injunction. *See Grimm*, *supra*. The Court notes hearsay has not affected the Court's ruling in this matter.

6

*Pashby*, 709 F.3d at 321. As explained below, and only for the limited purpose a preliminary injunction, the Court concludes Plaintiffs have clearly shown a likelihood that they will succeed at least to some extent on their breach of contract claim that they assert against Davis regarding the non-solicitation of a customer with whom he had "direct" responsibility while working for DePuy Synthes (namely, Dr. Christopher Paramore).[8] As to both Davis and Domico, no serious argument can be made regarding the enforceability of the respective territory restrictions set forth in their Agreements and implicitly recognized in their offer letters from K2M. Accordingly, the Court need not discuss Plaintiffs' likelihood of success on their three remaining claims (i.e., breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and tortious interference with contract). *See, e.g.*, *Handsome Brook Farm*, 193 F. Supp. 3d at 574 ("Because a plaintiff need only show a likelihood of success on one claim to obtain an injunction, the Court will not address the sufficiency of Plaintiff's [other] claims.").

The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. As a federal court sitting in diversity, the Court must apply the choice of law rules of the forum state—South Carolina. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). South Carolina law looks favorably on choice of law clauses and enforces them except in unusual circumstances. *Team IA, Inc. v. Lucas*, 717 S.E.2d 103, 108 (S.C. Ct. App. 2011). The Agreements state they "will be governed by Pennsylvania law applicable to contracts entered into and performed in Pennsylvania." ECF Nos. 1-1 & 1-2 at p. 5. The Supreme Court of Pennsylvania has explained:

---

[8] Plaintiffs seek preliminary injunctive relief for their breach of contract claim against Davis and Domico. *See* ECF No. 1 at ¶¶ 86–87.

> In Pennsylvania, restrictive covenants are enforceable if they are incident to an employment relationship between the parties; the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and the restrictions imposed are reasonably limited in duration and geographic extent. Our law permits equitable enforcement of employee covenants not to compete only so far as reasonably necessary for the protection of the employer. However, restrictive covenants are not favored in Pennsylvania and have been historically viewed as a trade restraint that prevents a former employee from earning a living.

*Hess v. Gebhard & Co. Inc.*, 808 A.2d 912, 917 (Pa. 2002) (internal citations and quotation marks omitted).

"Generally, under South Carolina choice of law principles, if the parties to a contract specify the law under which the contract shall be governed, the court will honor this choice of law." *Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 728 (D.S.C. 2007). "However, a choice-of-law clause in a contract will not be enforced if application of foreign law results in a violation of South Carolina public policy." *Id.* Other judges in the District of South Carolina have "held a post-employment agreement not to solicit employees or customers to the same standards as a covenant not to compete." *Id.* at 730 (Judge Norton's order relying on Judge Duffy's decision in *Rockford Mfg., Ltd. v. Bennet*, 296 F. Supp. 2d 681, 690 (D.S.C. 2003)). "Accordingly, before applying [Pennsylvania's] rule of contract construction, the court must first consider whether this rule violates South Carolina public policy. *Id.* at 728.

"The South Carolina Supreme Court has held that a covenant restricting the activities of an employee after the termination of his employment is not violative of public policy only if it is '[1] partial or restrictive in its operation, either as to time or place, [2] on some good consideration, and [3] [is] reasonable, that is, it afford[s] only a fair protection to the interests of the party in whose favor it is made.'" *Id.* at 728 (alterations in original) (quoting *Standard Register Co. v. Kerrigan*, 238 S.C. 54,

8

65, 119 S.E.2d 533, 539 (1961)).  At this juncture, and for the limited purpose of considering the propriety of preliminary injunctive relief, the Court notes the Agreements (including the non-competition and non-solicitation restrictive covenants) appear to be valid.

Pennsylvania law governs Plaintiffs' claim for breach of contract.  The elements for a breach of contract claim in Pennsylvania are "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages."  *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016).

### 1. Existence of a Contract

Defendants suggest the Agreements are unenforceable because none of the three Plaintiffs are parties to the Agreements or referenced in the them.  ECF No. 11 at pp. 4, 15 n.2; ECF No. 15 at p. 9.  Defendants assert Davis and Domico contracted with another entity, Synthes Spine Company L.P., which later merged with Johnson & Johnson in 2012 to form DePuy Synthes Sales, Inc. *Id.*  Defendants make a cursory argument—in a footnote—that "Plaintiffs therefore have no standing to pursue any contract-based claims because they are not actually a party to the Agreements."  ECF No. 11 at p. 15 n.2.

Plaintiffs characterize Defendants' argument as "distracting," ECF No. 20 at p. 1, and the Court quickly dispatches with it.  The offer letters that both Davis and Domico signed with K2M implicitly recognize the validity of the Agreements.  *See* ECF Nos. 11-3, 11-6, 15-2, & 15-3 at pp. 3–4.  Given that the Court's ruling is based on principles of **equity**, Defendants should be estopped at this stage from prevailing on their argument based on the contents of the K2M offer letters.  Moreover, another district court recently rejected the a similar argument regarding standing in *Synthes, Inc. v. Knapp*, 250

9

F. Supp. 3d 644, 652–54 (E.D. Cal. 2017).[9] Finally, at this early stage and without the benefit of full discovery (which may flesh out the corporate identity issue), the Court is disinclined to make a definitive ruling regarding standing. For the purposes of ruling on Plaintiff's preliminary injunction motion, the Court finds Plaintiffs have clearly shown a likelihood of the existence of an enforceable contract.

### 2. Breach

The Agreements contain the following non-competition and non-solicitation clauses:

> NO SOLICITATION OF CUSTOMERS & PROSPECTS
> I will not, for a period of one year after my employment with Synthes Spine terminates for any reason, solicit or contact, directly or through others, for the purpose of competing or interfering with any part of Synthes Spine's business, (1) any customer of Synthes Spine that I solicited at any time during the last three years of my employment; (2) any prospective customer of Synthes Spine that received or requested a proposal or offer from me on behalf of Synthes Spine at any time during the last three years of my employment; or (3) ***any customer or prospective customer of Synthes Spine for which I had any responsibility, directly*** or indirectly, ***at any time during the last three years of my employment.***
>
> . . . .
>
> NO COMPETITION IN SAME TERRITORY
> I am employed by Synthes Spine in sales, account management or maintenance, or customer service or support, with an assigned territory, and I agree I will not, for a period of one year after my employment terminates for any reason, work for (as an employee, consultant, contractor, agent or representative) any competitor of Synthes Spine in the territory or territories that I am now, or have been responsible for at any time during the last year of my employment with Synthes Spine. Competitors shall be deemed any persons or entities who now, or in the future, sell, or intend to sell, orthopedic, bone fixation, maxillofacial medical, endoscopic, and/or spinal implant device or instrumentation technologies, products, or

---

[9] Plaintiffs provided this case to the Court at the hearing.

10

services.

ECF Nos. 1-1 & 1-2 at p. 5. During his last year of employment with DePuy Synthes, Domico's territory included Florence, South Carolina. Notably, Domico was responsible for McLeod Regional Hospital in Florence. Domico states in his affidavit that "I have not – either before I resigned from DePuy Synthes or since – called on *any* of the accounts in my former DePuy Synthes Territory for K2M, nor have I introduced anyone else at K2M – including Davis – to those accounts at any point in time since contemplating leaving DePuy Synthes." ECF No. 11-1 at ¶ 43. Davis states in his declaration that "I did not cover a case for Domico with Dr. Paramore in August 2017." ECF No. 35 at ¶ 4.

Plaintiffs, however, have submitted a supplemental affidavit of Jay Stokes (a regional sales manager for DePuy Synthes) with several attached exhibits involving e-mails. *See* ECF No. 36. Two e-mails show calendar notices that Tara Barrineau (surgical coordinator at Florence Neurosurgery & Spine, PC) sent Domico on September 20, 2017, informing him that Dr. Paramore had two surgeries scheduled for October 12, 2017. *See* ECF No. 36 at pp. 5, 7. Tellingly, Davis admits in his affidavit that "[s]ince I started with K2M, I have done cases for K2M with only one surgeon – Dr. Christopher Paramore ("Paramore") at McLeod Regional Hospital." ECF No. 11-4 at ¶ 39.

The most critical exhibit is an e-mail chain reflecting correspondence between Domico and Davis on the evening of Sunday, August 6, 2017, while they were still employed by DePuy Synthes. *See id.* at pp. 14–15. In the first e-mail at 5:50 P.M, Domico tells Davis how to access the operating room at McLeod Regional, explains what medical hardware/implants are necessary, ***and specifies that "[a]s for the surgery, [p]lease try and be there by 7:15 at the latest <u>so you can speak to Paramore</u>***." *Id.* (emphasis added). Fifteen minutes later, Davis responds to Domico's email asking several questions about the implants. Domico answers Davis' email at 6:55 P.M., and Davis sends a final e-mail at 7:03

11

P.M. stating, "Ok. I'm leaving here in 10-15. I will call you on the way. Have a few other questions." *Id.* at p. 14. **This e-mail chain clearly shows Davis had "direct" responsibility for at least one surgery with Dr. Paramore in August 2017 *before he left DePuy Synthes*.** This is not an incident of "minimal" or "indirect" contact years ago. As previously mentioned, Davis admits in his affidavit that "[s]ince I started with K2M, I have done cases for K2M with only one surgeon – Dr. Christopher Paramore ("Paramore") at McLeod Regional Hospital." ECF No. 11-4 at ¶ 39. To his credit, Davis has submitted a screenshot of several text messages that he sent Dr. Paramore in October 2017 after he started working for K2M. *See* ECF No. 11-7 at p. 2. To sum up, Davis had "direct" responsibility for a surgery sale with Dr. Paramore in August 2017 while in the employ of DePuy Synthes, and then again twice in October 2017 while in the employ of K2M. No other reasonable conclusion exists, and this is the type of conduct typically sought to be prevented by non-compete agreements such as the Agreements here.

Based on the foregoing evidence, the Court finds Plaintiffs have clearly shown a likelihood that Davis violated the provisions of the non-solicitation clause prohibiting him from contacting any Synthes Spine customer for which he had ***direct***[10] responsibility at any time during the last three years of his

---

[10] Although the parties dispute the application of the word "indirectly" in the non-solicitation clause and whether that term is overbroad, the Court's above analysis demonstrates Davis' conduct involved "direct" responsibility for Dr. Paramore. In other words, the term "indirectly" is not relevant to and has no bearing on the Court's analysis and conclusion that Plaintiffs have clearly shown a likelihood that Davis violated the non-solicitation clause. The Court is not rewriting or "blue-penciling" the restrictive covenants at issue to reach its conclusion. *See generally Stonhard, Inc. v. Carolina Flooring Specialists, Inc.*, 621 S.E.2d 352, 353 (S.C. 2005) ("Terms in a non-compete agreement may be construed according to the law of another state. But if the resulting agreement is invalid as a matter of law or contrary to public policy in South Carolina, our courts will not enforce the agreement." (internal citation omitted)); *Poynter Invs., Inc. v. Century Builders of Piedmont, Inc.*, 694 S.E.2d 15, 18 (S.C. 2010) ("[I]n South Carolina, the restrictions in a non-compete clause cannot be rewritten by a court or limited by the parties' agreement, but must stand or fall on their own terms."); *Fay v. Total Quality Logistics, LLC*, 799 S.E.2d 318, 323 (S.C. Ct. App. 2017) ("[W]e may assess the validity of a noncompete agreement under the law of another state, but we must also assess whether the agreement comports with the public policy of South Carolina.").

employment.[11] The Court specifically points out that the August 6, 2017 e-mail correspondence between Davis and Domico speaks for itself and does not require the Court to weigh the competing allegations in the affidavits. *See* ECF Nos. 1-1 & 1-2 at p. 5 ("I will not, for a period of one year after my employment with Synthes Spine terminates for any reason, solicit or contact, directly or through others, . . . any customer or prospective customer of Synthes Spine for which I had any responsibility, directly or indirectly, at any time during the last three years of my employment.").

### 3. Damages

Plaintiffs have clearly shown a likelihood that they have suffered damages, as indicated by the next section indicating the permanent loss of Dr. Paramore as a customer.

In conclusion, the Court finds Plaintiffs have made a clear showing that they are likely to succeed on the merits of their breach of contract claim to a limited extent regarding Davis' interaction with Dr. Paramore. On the other hand, regarding Domico, the evidence submitted is insufficient to show a clear likelihood of success on Plaintiffs' claims at this stage, other than with regard to working the different territory required for twelve months, which the K2M offer letters signed by Davis, Domico, and K2M specifically contemplate.

### B. Likelihood of Irreparable Harm

The second *Winter* factor requires Plaintiff to clearly show irreparable harm will occur absent

---

[11] Defendants note restrictive covenants are disfavored under Pennsylvania law, and they argue Plaintiffs ask the Court to "impose restrictions outside the contours of the restrictive covenants as written and agreed upon." ECF No. 11 at pp. 23–25; ECF No. 15 at pp. 19-21. Defendants assert, "The Court should not entertain DePuy Synthes' request to prohibit **Davis** and Domico **from working for K2M in *other* territories and from soliciting customers for whom they had *no responsibility*, or with whom they had minimal contact, years ago**." ECF No. 11 at p. 25; ECF No. 15 at p. 21 (bold emphases added). Defendants' arguments miss the point. Davis' activities involving Dr. Paramore in August 2017 (for DePuy Synthes) and in October 2017 (for K2M) clearly fall within the contours of the non-solicitation clause prohibiting him from contacting any Synthes Spine customer for which he had *direct* responsibility at any time during the last three years of his employment.

13

an injunction. *See* 555 U.S. at 20. "[I]rreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994), *abrogated on other grounds by Winter*, 555 U.S. 7. The Fourth Circuit has observed that "[w]here the harm suffered by the moving party may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994). "However, when the failure to grant preliminary relief creates the [likelihood][12] of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." *Multi-Channel TV Cable Co.*, 22 F.3d at 552.

The Court finds Plaintiffs have clearly shown a likelihood that they will suffer irreparable harm absent a preliminary injunction. Jay Stokes states in his affidavit that "DePuy Synthes has already lost a significant amount of business in the account of Dr. Paramore at McLeod Health," and—more critical to the question of irreparable harm—that "Dr. Paramore is one of the customers that has been ***converted*** to K2M since Davis and Domico began their employment with K2M." ECF No. 20-1 at ¶¶ 11, 14 (emphasis added). And as previously mentioned, Davis admits in his affidavit that since he started with K2M, he has performed cases "with only one surgeon – Dr. Christopher Paramore ("Paramore") at McLeod Regional Hospital." ECF No. 11-4 at ¶ 39. In light of this evidence, the Court concludes Plaintiffs have clearly shown a likelihood that DePuy Synthes has permanently lost Dr. Paramore as a client. *See Multi-Channel TV Cable Co.*, 22 F.3d at 552; *see, e.g.*, *Merrill Lynch, Pierce, Fenner &*

---

[12] The Fourth Circuit originally used the term "possibility" (and not "likelihood), but as one district court recently explained in applying *Multi-Channel TV Cable Co.*, *Winter* "requires that the plaintiff make a clear showing that it is ***likely*** to be irreparably harmed absent preliminary relief." *Audiology Distribution, LLC v. Hawkins*, 2013 WL 6583849, at *5 (N.D.W. Va. Dec. 16, 2013) (emphasis added), *aff'd*, 578 F. App'x 260 (4th Cir. 2014).

14

*Smith, Inc. v. Bradley*, 756 F.2d 1048, 1055 (4th Cir. 1985) (affirming the district court's grant of a preliminary injunction because the plaintiff "faced irreparable, noncompensable harm in the loss of its customers"). Accordingly, the Court finds Plaintiffs have clearly shown irreparable injury will result absent a preliminary injunction.

### C. Balance of Equities

The third *Winter* factor requires Plaintiffs to show the balance of the equities tips in their favor. *See Winter*, 555 U.S. at 20. The irreparable harm to Plaintiffs—i.e., the likely permanent loss of Dr. Paramore—tips the equities in their favor. Based on its above discussion of irreparable harm, the Court is only enjoining Davis from soliciting or contacting Dr. Paramore. McLeod Hospital is a large regional medical center with many physicians having privileges there, and the Court notes that while McLeod provides the location of the surgery, Davis' primary direct contact here was not so much with McLeod as it was with Dr. Paramore. This limited injunction is narrowly tailored, and while it does impose a slight burden on Davis, it does not prevent him from working in his territory altogether. Davis is free to continue his trade anywhere else in his K2M territory including McLeod Regional Hospital (just not with Dr. Paramore) or beyond, and Domico is free to work anywhere in his K2M territory or beyond. Finally, requiring Plaintiffs to post a bond in the amount of $100,000 (outlined below) will mitigate any risk of lost income for Davis. *See* Fed. R. Civ P. 65(c) (requiring a movant granted preliminary injunctive relief to post bond "to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained"). The Court finds Plaintiffs have carried their burden to show the equities tip in their favor.

### D. Public Interest

The final *Winter* factor requires Plaintiffs to show preliminary injunctive relief is in the public

15

interest. *See Winter*, 555 U.S. at 20. The public interest does not weigh heavily in this case, given that the interests at issue are mainly private. To the extent the public may be affected, K2M is still free to send any other representative (other than Davis and Domico) to solicit or contact Dr. Paramore. In other words, both Dr. Paramore and the public can still obtain K2M's product for surgeries. The Court has taken extreme care in fashioning a *limited and narrowly tailored* preliminary injunction that will not disrupt vital medical procedures. The Court also takes into account consideration of free trade, competition, and healthcare, all of which are part of the public interest, and this limited preliminary injunction allows Dr. Paramore to still deal with other K2M representatives for the duration of the limited injunction and use K2M's products.

Moreover, preservation of the status quo and protection of the sanctity of contracts is in the public interest. *Moller-Maersk A/S v. Escrub Sys.*, Inc., 2007 WL 4562827, at *4 (E.D. Va. Dec. 21, 2007). "The public interest is also served by ensuring that legitimate contracts are enforced." *Asheboro Paper & Packaging, Inc. v. Dickinson*, 599 F. Supp. 2d 664, 678 (M.D.N.C. 2009). At the same time, the Court remains mindful that public policy in both South Carolina and Pennsylvania disfavors restrictive covenants limiting a man's right to exercise his trade. *See Milliken & Co. v. Morin*, 731 S.E.2d 288, 292 (S.C. 2012); *Hess v. Gebhard & Co. Inc.*, 808 A.2d 912, 917 (Pa. 2002). By requiring Davis to honor the non-solicitation clause and only prohibiting him from contacting Dr. Paramore, the Court reconciles the public's interest in free trade, competition, and healthcare with its interest in the enforcement of contracts. In sum, the Court finds Plaintiffs have met their burden to show a *limited and narrowly tailored* preliminary injunction is in the public interest.

### E. Bond

A court can issue a preliminary injunction "only if the movant gives security in an amount that

the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Neither Davis nor Domico have provided information regarding their current compensation with K2M.[13] However, Stokes' supplemental affidavit specifies Davis and Domico were paid in excess of $265,000 and $165,000, respectively, in 2016 while with DePuy Synthes. ECF No. 36 at ¶ 6. In light of these figures, and because the Court is only enjoining Davis from soliciting/contacting only Dr. Paramore (and not McLeod Regional Hospital entirely or any other physician/surgeon/medical personnel in Davis' K2M territory), the Court finds $100,000 is a proper bond amount and orders Plaintiffs to post this amount no later than 5:00 P.M. on Monday, December 4, 2017.

To summarize, the Court will grant in part and deny in part Plaintiffs' motion for preliminary injunction and issue a *Limited* Preliminary Injunction Order, as set forth below. Davis is enjoined from soliciting or contacting only Dr. Paramore until October 3, 2018 for purposes of competing or interfering with any part of Plaintiffs' business. **This injunction is narrowly tailored and *is limited to only Dr. Paramore* and does not prohibit Davis from contacting other surgeons/physicians/medical personnel at McLeod Regional Hospital or elsewhere in his K2M territory.**

## II.  Motion for Expedited Discovery

Plaintiffs request limited expedited discovery to develop the record in support of their request for interim injunctive relief.[14] *See* ECF No. 6. Parties generally cannot engage in discovery before they

---

[13] Davis and Domico provided copies of their offer letters from K2M but redacted the portion detailing their compensation arrangements with K2M. *See* ECF Nos. 11-3 & 11-6 at p. 2.

[14] As previously mentioned, Plaintiffs' counsel emailed chambers requesting an immediate hearing on the preliminary injunction motion, and the Court scheduled a hearing at its earliest availability. *See* ECF No. 32-1 at p. 9; ECF Nos. 22 & 23. Plaintiffs' counsel informed the Court at the hearing that Plaintiffs were still seeking limited

have engaged in a Rule 26(f) conference.[15] *See* Fed. R. Civ. P. 26(d)(1). One exception to this rule is for expedited discovery "authorized . . . by court order." *Id.* The Federal Rules of Civil Procedure are silent as to what standard a court should apply when considering whether expedited discovery is appropriate, and the Fourth Circuit Court of Appeals has not addressed the issue. However, district courts within the Fourth Circuit and elsewhere have applied two different standards, "one applying modified preliminary injunction factors and another 'reasonableness,' or 'good cause' test." *ForceX, Inc. v. Tech. Fusion, LLC*, 2011 WL 2560110, at *5 (E.D. Va. June 27, 2011) (collecting cases).

In light of its issuance of a *Limited* Preliminary Injunction Order, the Court finds expedited discovery is warranted under either of the two standards for expedited discovery. *See, e.g.*, *Ciena Corp. v. Jarrard*, 203 F.3d 312 (4th Cir. 2000) (authorizing expedited discovery when a preliminary injunction order was already in effect). Accordingly, the Court will grant in part Plaintiffs' motion for expedited discovery and permit Plaintiffs, if they still wish to do so, to within sixty days of the date of this Order (1) take the depositions of Davis and Domico,[16] (2) serve five limited interrogatories on each, and (3) serve five limited requests for production on each. If Plaintiffs desire a further additional evidentiary hearing, they should notify the Court by January 31, 2018. **The Court reserves the right to modify**

---

expedited discovery, and an evidentiary hearing to cross-examine witnesses. *See generally* Statements Imagine Medispa, LLC v. Transformations, Inc., 999 F. Supp. 2d 862, 869 (S.D.W. Va. 2014) ("Statements contained in an uncontroverted affidavit may be accepted as true, 'but if there are genuine issues of material fact raised in opposition to a motion for a preliminary injunction, an evidentiary hearing is required,' *Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004); *Blackwelder Furniture Co.*, 550 F.2d at 192 n.1 (noting that if 'everything turns on what happened and that is in sharp dispute,' the court should ordinarily hold an evidentiary hearing and require live testimony, rather than rely on the parties' submissions))." (some internal citations omitted)).

[15] Under the current scheduling order, the deadline for the Rule 26(f) conference is December 11, 2017, and the deadline for discovery is June 19, 2018. *See* ECF No. 34.

[16] In the event Plaintiffs decide to proceed with expedited discovery, they may not depose Davis and Domico a second time.

**(i.e., expand or narrow) or to completely dissolve this *Limited* Preliminary Injunction Order in the event the Court conducts an additional evidentiary hearing and the evidence supports it.**

## Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion for preliminary injunction [ECF No. 5]. The Court hereby **ISSUES** the following *Limited* Preliminary Injunction Order:

(1) The parties shall comply with those provisions in the proposed order that Plaintiffs submitted at the hearing in this matter, specifically those paragraphs to which they agreed and the remaining paragraphs modified by the Court:

 (a) Defendants shall maintain and hold all records, documents, or other forms of information, including that stored in electronic form in any place which they may store such information, which relate to the allegations in the Verified Complaint, to ensure the fair conduct of this litigation, and within ten (10) days of the date of entry of this Order, Defendants or their counsel shall image all electronic devices, online or cloud storage accounts, and personal email accounts owned, controlled, or used by Davis or Domico and preserve such images.

 (b) Within ten (10) days of the date of entry of this Order, Davis and Domico shall identify and return all of Plaintiffs' property and confidential information (whether in paper or electronic format) in any of their possession, custody, or control by delivering all such property and information to Plaintiffs' legal counsel and by certifying that they are no longer in possession of such property and confidential information, including through the deletion of any such property or confidential information that exists on any electronic device, online or cloud storage account, or personal email account owned, controlled, or used by Davis or Domico.

 (c) Davis and Domico are hereby enjoined from accessing, using, or disclosing Plaintiffs' "proprietary and confidential information" (as defined in the Confidentiality, Non-Solicitation, and Non-Competition Agreements attached to the Verified Complaint (collectively, the "Agreements")) and from any further participation in any conference calls or discussions using Plaintiffs' dial-in information.

(d) Until further order of this Court, Davis is hereby enjoined from any direct or indirect contact with, solicitation of, servicing of, or responsibility for Dr. Christopher Paramore. **This injunction is limited to only Dr. Paramore and does not prohibit Davis from contacting other surgeons/physicians/medical personnel at McLeod Regional Hospital or elsewhere in his K2M territory.**

(e) Until further order of this Court, Davis and Domico are hereby enjoined from engaging in any contact with each other regarding the servicing or support of K2M customers in their assigned K2M territories.

(f) K2M shall provide a copy of this *Limited* Preliminary Injunction Order to any parent, subsidiary, or affiliated company of K2M, including Defendant K2M Incorporated, which is alleged to be the current employer of Davis and Domico (*see* ECF No. 21 at p. 1.) and to any immediate supervisor(s) of Davis and Domico.

(2) Plaintiffs shall post bond in the amount of $100,000 no later than 5:00 P.M. on Monday, December 4, 2017. This bond amount is for the benefit of Davis to secure any costs or damages that he may suffer due to this injunction. To the extent any party believes an additional bond is necessary, they should advise the Court within five days.

(3) This Order shall remain in effect during the pendency of this action and until further order of the Court, but at the longest no later than one year from the respective dates that Domico and Davis terminated their employment with DePuy Synthes.

Furthermore, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Expedited Discovery [ECF No. 6]. If they choose to do so, Plaintiffs may within sixty days of the date of this Order (1) take the depositions of Davis and Domico, (2) serve five limited interrogatories, and (3) serve five limited requests for production, and Plaintiffs can request an additional evidentiary hearing by January 31, 2018. **IT IS SO ORDERED.**

Florence, South Carolina  s/ R. Bryan Harwell
December 1, 2017  R. Bryan Harwell
 United States District Judge